**W. A. LANGLEY, Appellant,**

v.

**V. C. HARDY, Appellee.**

No. 15137.

Court of Civil Appeals of Texas.

Dallas.

June 8, 1956.

Rehearing Denied Sept. 21, 1956.

Rosenfield & Berwald, Dallas, for appellant.

Johnson, Guthrie & Stanfield, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from an order overruling a plea of privilege.

The suit was originally filed by appellee V. C. Hardy against L. O. Langley. While suit was pending L. O. Langley died. Thereafter Ruby Frances Langley, Independent Executrix of the Estate of L. O. Langley, deceased was made a party defendant. At the same time W. O. Brown of Dallas County, Texas, and W. A. Langley of Howard County, Texas, father of the deceased, were also made parties defendant. W. A. Langley filed a plea of privilege seeking to transfer the cause as

to him to Howard County. His plea was overruled, hence this appeal.

The amended petition filed by appellee is rather long, so we shall not attempt to set out its contents in detail. Appellee in his brief has undertaken to give a short summary of his pleadings, which summary we believe is sufficient to show the nature of the suit. We quote part of said summary:

"Appellee charged that L. O. Langley, now deceased, represented herein by his Executrix, L. O. Langley's father, W. A. Langley, and W. O. Brown conspired and connived to cheat and defraud him out of a successful partnership venture, in which L. O. Langley, W. O. Brown and the plaintiff V. C. Hardy were partners; that L. O. Langley converted lumber and other materials belonging to the partnership to his personal use; that he purchased materials in the name of the partnership which he used personally; that he converted partnership funds to his own use; that he converted to his own use property held by the partnership on consignment from third parties for which the partnership was held accountable; that L. O. Langley and W. O. Brown by fraudulent misrepresentations induced the plaintiff, V. C. Hardy, to incorporate the partnership and such corporation was devised and used as a vehicle of fraud and a cloak for L. O. Langley, W. O. Brown and W. A. Langley in depriving Hardy of the control of partnership assets; that B. F. Goodrich Company obtained a judgment against the fictitious corporation and L. O. Langley and V. C. Hardy, individually, in the sum of $13,500 because of the conversion by L. O. Langley of property left on consignment with the partnership, the predecessor of the corporation; that L. O. Langley promised to pay this judgment personally, but that W. A. Langley purchased it and contrary to the above agreement, levied against the property of Hardy to collect such judgment, and that Hardy's stock in the fictitious corporation was seized and real property belonging to Hardy personally was also seized.

"That in furtherance of the scheme to defraud Hardy, L. O. Langley and W. A. Langley entered into a written contract to sell to him the assets of the partnership, then controlled by the fictitious corporation, but such purported sale was used by L. O. Langley and W. A. Langley as a device to have Hardy front for the corporation and as a cloak behind which L. O. Langley and W. A. Langley could convert the most valuable assets of the corporation to their own use, leaving only a shell for Hardy and the creditors; that L. O. Langley and W. A. Langley breached such written contract and never permitted Hardy thereunder to gain control of the assets of the fictitious corporation.

"These are not all the allegations of the first amended original petition of the plaintiff. They are sufficient to show joint fraudulent acts, joint conspiracy, joint breach of contract, joint commingling and joint conversion of funds, for all of which plaintiff sought relief."

Appellee himself testified and offered one additional witness, an attorney who at one time represented L. O. Langley and his father W. A. Langley. W. A. Langley, appellant, did not testify nor did he call any witness in his behalf.

Appellee's testimony must be briefly summarized. In 1946 appellee and deceased, L. O. Langley, entered into a partnership under the name Ace Cartage Company. Appellee was manager of the business. The Company prospered until in 1952 it was making a profit of $3,000 per month, and had net assets of $35,000. In 1952 appellee fell seriously ill, and for some months was in a hospital. During his illness L. O. Langley took charge. While in charge of the business L. O. Langley converted cash and assets of the partnership to his own use, including about 3,000 tires placed on consignment by B. F. Goodrich Rubber Company. He alienated customers of the business until its profits fell to $250 per month. When appellee finally recovered from his illness, L. O. Langley refused to let him resume his

role as manager of the business. Appellee was induced to sell a small interest in the partnership to W. O. Brown.

Thereafter the business was incorporated with appellee's consent but at the behest of L. O. Langley and W. O. Brown, and the remaining assets of the partnership were transferred to the corporation. Meantime B. F. Goodrich Company sued and obtained judgment for $13,500 against the corporation and against Hardy, Langley and Brown, the former partners. Then appellee was told by L. O. Langley that to protect appellee, he, L. O. Langley, would himself pay off the judgment. Thereafter W. A. Langley, through his attorney, bought the B. F. Goodrich judgment. But L. O. Langley did not pay it off. Instead, appellee's stock in the corporation was seized by the United States Marshal, and was subsequently acquired by appellant W. A. Langley. No levy or seizure was made against the property of either Brown or L. O. Langley, although the latter owned real estate.

After W. A. Langley acquired appellee's corporation stock through judgment sale by the United States Marshal, appellee was excluded from any voice in the corporation's affairs. However a written contract was later entered into whereby appellee was to take over as owner and manager, L. O. Langley and W. A. Langley agreeing to transfer their stock to him in consideration of the payment of the corporation's debts. This contract was signed by L. O. Langley for himself and as agent for his father, W. A. Langley. Appellee was to pay $300 per month to W. A. Langley to retire the B. F. Goodrich judgment, which had been purchased by Langley. Appellee testified that he faithfully made his payments totaling about $4,500—sometimes paying W. A. Langley and his wife more than $300 per month, but that nevertheless W. A. Langley breached said contract by causing an execution to issue and levying on and selling real estate owned by appellee. Thereafter L. O. Langley and W. A. Langley caused

a petition in bankruptcy to be filed, and the corporation was subsequently adjudicated a bankrupt.

In his controverting affidavit and in his brief appellee asserts that venue is properly laid in Dallas County, Texas, under Sections 4, 6, 10 and 29a of Article 1995, V.A.C.S. However in his brief in answer to appellant's six points on appeal, appellee presents only one counter-point, which is as follows: "Where plaintiff establishes his right to maintain venue where laid by alleging joint cause of action against three defendants and proving cause of action against one of the resident defendants, such right is not altered even if evidence upon hearing of plea of privilege affirmatively discloses that plaintiff had no cause of action, either joint or several, against non-resident defendant." By this counter-point appellee seeks to invoke exception 4 of Article 1995, V.A.C.S., as grounds for retaining venue in Dallas County, Texas.

The proper application of exception 4, of Article 1995, V.A.C.S., has been discussed in an opinion adopted by our Supreme Court in Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300. It was there held that (1) it is not incumbent upon the plaintiff to prove a cause of action against the nonresident defendant; and (2) plaintiff establishes his right to maintain venue where laid by (a) alleging a joint cause of action against the defendants, or a cause of action against the resident defendant so intimately connected with the cause of action alleged against the nonresident defendant that the two may be joined under the rule intended to avoid a multiplicity of suits, *the nature of the suit being determined by plaintiff's petition,* (b) proving by independent evidence that the defendant alleged to reside in the county where the suit is pending in fact resides in such county, and (c) proving also that the plaintiff has a cause of action as alleged against the resident defendant. The opinion further holds that the rule as above set out would not be

altered if the evidence upon the hearing of the plea of privilege affirmatively disclosed that the plaintiff had no cause of action, either joint or several, against the nonresident defendant.

Applying exception 4, Article 1995 as above interpreted in the Stockyards National Bank case, to the facts presented in the instant case, we are of the opinion that the trial court properly overruled appellant's plea of privilege. Appellee's petition alleges a joint cause of action against the defendants, or certainly a cause of action against W. A. Langley, the nonresident defendant, so intimately related to the cause of action alleged against the resident defendant as to come within the rule regarding multiplicity of suits; it is undisputed that two of the defendants reside in Dallas County, Texas, where the suit was filed; and appellee by his evidence made out a cause of action as alleged against at least one of the resident defendants. It is immaterial to the venue question before us whether appellee's evidence disclosed a cause of action against W. A. Langley, the nonresident defendant.

We overrule appellant's first and second points on appeal and sustain appellee's counterpoint. In the light of such holdings appellant's other points are immaterial, so we shall not pass on them.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

In his motion for rehearing appellant complains that appellee's summary of his pleadings, which we adopted from appellee's brief, does not properly, adequately, or fairly show the nature of the suit. While we do not agree with appellant's criticism, we think it well to present our own summary of appellee's First Amended Original Petition.

In his introductory paragraph appellee names the parties defendant including appellant W. A. Langley, and asks "for an accounting, the appointment of a receiver *and other relief* * * *." (Emphasis supplied.)

In paragraph III appellee alleges that "L. O. Langley and his father, W. A. Langley, and W. O. Brown conspired and connived to cheat and defraud V. C. Hardy out of his interest in the Ace Cartage Company, * * *." Then follow four paragraphs describing specific acts of embezzlement, fraud, etc., alleged to have been perpetrated while appellee was in the hospital unable to look after his own interests. In each instance L. O. Langley was the person who is alleged to have been active in commiting the wrongdoing, but the form of the pleading unmistakably implies that the acts were committed in furtherance of the "conspiracy and connivance."

In paragraphs IV, V, and VI appellee alleges that following appellee's release from the hospital, L. O. Langley induced appellee to sell a small interest in the partnership to Brown. Thereafter L. O. Langley and Brown excluded appellee from any participation in the business, not even allowing him access to the partnership's books and records, and notifying third parties that appellee no longer had an interest in the business.

In paragraph VII appellee alleges that he was induced by fraudulent misrepresentations of L. O. Langley to join in the formation of a corporation and to transfer the assets of the partnership to the corporation. This "corporation was nothing more or less than a vehicle of fraud to effect and bring about malicious diversion, conversion, concealment and confiscation of Hardy's properties and assets and as a cloak for the wrongful and criminal acts of L. O. Langley and W. O. Brown and W. A. Langley in misappropriating the plaintiff's property."

In paragraph VIII appellee alleges that B. F. Goodrich Company obtained judgment against the corporation and the former partners for $13,500, being the value of tires converted by L. O. Langley. Ap-

pellee agreed to the judgment because L. O. Langley agreed to pay the judgment himself, and appellee would not have to pay any part of it. But that W. A. Langley, in furtherance of the conspiracy to defraud appellee, purchased the judgment from B. F. Goodrich Company and seized appellee's stock in the corporation without crediting the judgment with the proceeds of the stock; and further, W. A. Langley sold under execution a duplex apartment owned by appellee, and is now insisting that appellee pay the entire balance on the judgment. The seizure and sale under execution of his property, says appellee, was in breach of a written contract between L. O. Langley and W. A. Langley on the one hand, and appellee on the other hand, wherein it was provided that appellee should pay the judgment at the rate of $300 per month out of the corporation assets.

In paragraph IX appellee sets out the terms of the written contract above referred to, which contract he alleges he was performing on his part when L. O. Langley and W. A. Langley threw the business into bankruptcy. Appellee asserts that the breach of the contract and the activities of the Langleys in connection with the bankruptcy were all a part of their fraudulent scheme to defeat and defraud appellee out of his interest in the partnership and the corporation.

In his prayer appellee asks that a receiver be appointed to take over the assets of defendants; that he have judgment against defendants "jointly and severally, for whatever sum a true accounting shows he is entitled," which appellee estimates at $30,000; and "for such other and further relief, general and special, at law and in equity, to which he may be justly entitled."

In the above summary we have not attempted to cover all the allegations in appellee's petition. However, we have again carefully read the whole pleading which we think unquestionably alleges a

joint and several cause of action involving conversion and fraud on the part of L. O. Langley with the connivance of W. A. Langley.

The evidence adduced at the hearing on the plea of privilege is sufficient to support a finding of conversion and fraud on the part of L. O. Langley, now deceased, who had his domicile in Dallas County, Texas, where Ruby Frances Langley, Independent Executrix, is now administering his estate. Since it was not necessary for appellee to prove his allegation of connivance on the part of W. A. Langley, we shall not pass on the sufficiency of the evidence in that respect.

The motion for rehearing is overruled.